UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MCC MANAGEMENT OF NAPLES, INC.; BGC
II MANAGEMENT OF NAPLES, INC.; MILES
C. COLLIER; BARRON G. COLLIER, II,

               Plaintiffs,

vs.                              Case No. 2:07-cv-387-FtM-29SPC

ARNOLD & PORTER LLP; KENT A.
YALOWITZ; THOMAS R. DWYER; MELVIN C.
GARBOW,

               Defendants.
_____

MCC MANAGEMENT OF NAPLES, INC., BGC
II MANAGEMENT OF NAPLES, INC., MILES
C. COLLIER, BARRON G. COLLIER, II,

               Plaintiffs,

                                Case No. 2:07-cv-420-FtM-29DNF

ARNOLD & PORTER LLP,

               Defendant.
_____

**OPINION AND ORDER**

    This matter comes before the Court on Defendants' Motion to Compel Deposition Answers and to Re-Depose Plaintiffs Miles C. Collier and Barron G. Collier, II (Doc. #S-14), filed on October 22, 2009. Plaintiffs' Response (Doc. #S-15) was filed on November 20, 2009.

    Defendants assert that the individual plaintiffs improperly failed to answer a number of questions in their respective depositions and then made substantive revisions to their testimony

by way of improper errata sheets. Defendants seek an order compelling plaintiffs to answer the questions, to explain the substantive changes in the errata sheets, and to answer reasonable follow-up questions at a renewed deposition.

**I.**

The Second Amended Complaint (Doc. #40), the operative pleading in this case, asserts various state law claims against the law firm of Arnold & Porter, LLP (A&P) and three of its attorneys, Kent A. Yalowitz (Yalowitz), Thomas R. Dwyer (Dwyer) and Melvin C. Garbow (Garbow). Federal jurisdiction is premised on complete diversity of citizenship. Count I alleges breach of contract implied in fact by A&P; Count II alleges breach of fiduciary duty by A&P; Count III alleges constructive fraud by A&P; Count IV alleges actual fraud by A&P; Count V alleges professional negligence (legal malpractice) against A&P; Count VI alleges negligent misrepresentation by A&P; Count VII alleges tortious interference with a business relationship by A&P; Count VIII alleges aiding and abetting breach of fiduciary duty by A&P; Count IX alleges aiding and abetting constructive fraud by A&P; Count X alleges aiding and abetting fraud by A&P; Count XI alleges violation of the Florida Deceptive and Unfair Trade Practices Act by A&P; Count XII alleges breach of contract implied in fact by Yalowitz; Count XIII alleges breach of fiduciary duty by Yalowitz; Count XIV alleges constructive fraud by Yalowitz; Count XV alleges active fraud by Yalowitz; Count XVI alleges Professional Negligence

by Yalowitz; Count XVII alleges negligent misrepresentation by Yalowitz; Count XVIII alleges tortious interference with a business relationship with Yalowitz; Count XIX alleges aiding and abetting breach of fiduciary duty by Yalowitz;  Count XX alleges aiding and abetting constructive fraud by Yalowitz; the second Count XX alleges aiding and abetting fraud by Yalowitz; Count XXII alleges violation of the Florida Deceptive and Unfair Trade Practices Act by Yalowitz; Count XXIII alleges breach of contract implied in fact by Dwyer; Count XXIV alleges breach of fiduciary duty by Dwyer; Count XXV alleges constructive fraud by Dwyer; Count XXVI alleges actual fraud by Dwyer; Count XXVII alleges professional negligence by Dwyer; Count XXVIII alleges negligent misrepresentation by Dwyer; Count XXIX alleges tortious interference with a business relationship by Dwyer; Count XXXI alleges aiding and abetting breach of fiduciary duty by Dwyer; the second Count XXXI alleges aiding and abetting constructive fraud by Dwyer; Count XXXIII alleges aiding and abetting fraud by Dwyer; Count XXXIII alleges violation of the Florida Deceptive and Unfair Trade Practices act by Dwyer; Count XXXIV alleges breach of contract implied in fact by Garbow; Count XX[X]V alleges breach of fiduciary duty by Garbow; Count XXXVI alleges constructive fraud by Garbow; Count XXXVII alleges actual fraud by Garbow; Count XXXVIII alleges professional negligence by Garbow; Count XXXIX alleges negligent misrepresentation by Garbow; Count XL alleges tortious interference

with a business relationship by Garbow; Count XLI alleges aiding and abetting breach of fiduciary duty by Garbow; Count XLII alleges aiding and abetting constructive fraud by Garbow; Count XLIII alleges aiding and abetting fraud by Garbow; and Count XLIV alleges violation of the Florida Deceptive and Unfair Trade Practices Act by Garbow.  In addition to the allegations in the Second Amended Complaint, the Court made detailed factual findings in an Opinion and Order (Doc. #276) in connection with a motion to strike.

On August 27 and 28, 2009, plaintiffs Miles C. Collier and Barron G. Collier, II appeared at their respective depositions.  At these depositions, plaintiffs refused to answer several categories of questions.  In some instances, plaintiffs refused to identify the basis for their refusal to answer.  In other instances, it appeared that plaintiffs' were asserting the attorney-client privilege.  Plaintiffs refused to respond to questions regarding their relationship with defendants, even though that relationship is at the heart of this suit.  Plaintiffs further refused to disclose information regarding conversations where an attorney "may" have been present.  Finally, plaintiffs asserted that they had no firsthand knowledge of the issues in this case other than the information they learned through communications with counsel.

**II.**

Because this is a civil action in which state law supplies the rule of decision as to the substantive claims and defenses, issues

of privilege are determined in accordance with state law. Fed. R. Evid. 501. The Florida attorney-client privilege is codified in § 90.502(2), Florida Statutes, which states: "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client."

The burden of establishing the attorney-client privilege rests on the party claiming it. S. Bell Tel. & Tel. Co. v. Deason, 632 So. 2d 1377, 1383 (Fla. 1994)(citing Fisher v. United States, 425 U.S. 391 (1976)); Black v. State, 920 So. 2d 668, 671 (Fla. 5th DCA 2006). When, however, communications appear on their face to be privileged, the party seeking disclosure must prove that they are not privileged. Shell Oil Co. v. Par Four P'ship, 638 So. 2d 1050, 1050-51 (Fla. 5th DCA 1994); Haskell Co. v. Georgia Pac. Corp., 684 So. 2d 297, 298 (Fla. 5th DCA 1996). If an exception to the privilege applies, the party seeking disclosure bears the burden of proving facts in support of that exception. Ford Motor Co. v. Hall-Edwards, 997 So. 2d 1148, 1153 (Fla. 3d DCA 2008); see also American Tobacco Co. v. State, 697 So. 2d 1249, 1256 (Fla. 4th DCA 1997)(The prima facie evidence standard is applicable with regard to asserted exceptions.).

**A.**

On a number of occasions, plaintiffs failed to specify the basis for their refusal to answer certain questions. Defense

counsel followed up by asking whether the refusal to answer was based upon the assertion of the attorney-client privilege. Plaintiffs' counsel instructed both plaintiffs not to answer these follow-up questions.

There is no legal basis for a witness at a deposition to refuse to tell counsel the basis upon which the witness is refusing to answer a question. Each such question was proper, and was an attempt to obtain a clear record of the reason for the refusal to answer an otherwise relevant question. Plaintiffs will be required to answer each of those questions. Specifically, referring to Exhibits A and B of Defendants' Motion (Doc. #S-14), plaintiffs will be required to answer such questions on the following deposition pages: Exhibit A: pp. 44, 56, 72-75, 99, 100-01, 105-06, 108-09, 111; Exhibit B: pp. 194, 196-98, 204-05, 225.

**B.**

In other instances, plaintiffs clearly identified the attorney-client privilege as their basis for refusing to answer certain questions. Defendants' counsel then re-phrased the question to eliminate any basis of knowledge involving plaintiffs' attorneys. Nonetheless, plaintiffs refused to answer such questions.

Plaintiffs' refusal was improper. The questions themselves clearly established that the answers would not call for any information within the attorney-client privilege. Thus, plaintiffs should answer the questions to the best of their knowledge without

reference to confidential information obtained from counsel. If, as counsel argues, the individual plaintiffs have no firsthand knowledge of the facts in this case, then plaintiffs must so state. Specifically, plaintiffs will be required to answer such questions on the following deposition pages: Exhibit A: pp. 73-75, 99; Exhibit B: pp. 123, 169, 192-98, 200, 203-09, 224.

## C.

Despite suing their alleged former attorneys based upon alleged misconduct in and during the attorney-client relationship, plaintiffs have asserted the attorney-client privilege as to questions relating to their discussions with defendants. (Doc. # S-14, Exhibit A, pp. 54-56.) This assertion was improper.

Florida Statute Section 90.502(4)(c) provides: "(4) There is no lawyer-client privilege under this section when: . . . . . (c) A communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship." S&I Invs. v. Payless Flea Mkt., Inc., 10 So. 3d 699, 703 (Fla. 4th DCA 2009). Plaintiffs have waived any attorney-client privilege with defendants as to matters relevant to this case by suing their former attorneys for legal malpractice and other related claims. Procacci v. Seitlin, 497 So. 2d 969, 969-70 (Fla. 3d DCA 1986). Such a waiver is limited solely to the subjects of the lawsuit, and only conversations pertinent to these subjects can be reached. Procacci, 497 So. 2d at 969; Ferrari v. Vining, 744 So. 2d 480, 481-82 (Fla. 3d DCA 1999).

Accordingly, no privilege applies to communications between plaintiffs and defendants pertinent to the subject matter of this suit.

Upon reviewing the deposition transcripts submitted to the Court, it appears that all of the questions posed by defendant's counsel were relevant to plaintiffs' claims against defendants. Thus, plaintiffs must answer those questions to the extent that they call for direct or indirect communications between defendants and plaintiffs, related to defendants' representation of plaintiffs. This is so, whether or not those communications were relayed through plaintiffs' representatives. See Part II.E, *infra*.

**D.**

Some assertions of the attorney-client privilege were based upon the possibility that an attorney "may" have been present, even though the witness admitted he had no recollection if an attorney was indeed present. Unless an attorney was in fact present and acting in his or her professional capacity as a provider of legal services, plaintiffs will be required to answer those questions.[1] Specifically, plaintiffs will be required to answer such questions on the following deposition pages: Exhibit A: pp. 36, 40.

---

[1] If an attorney was indeed present and acting in his/her professional capacity, plaintiffs will be required to identify the attorney and all other persons present, the date and place of the communication and the general subject matter of the communication.

**E.**

Finally, plaintiffs allege that from the time they sold their interest in Local/IBC in September 1997, they designated representatives to handle all aspects of the FDIC case, and these representatives communicated with defendants for over a decade regarding plaintiffs' interest in the FDIC case. Plaintiffs thus assert that they do not have significant firsthand knowledge of the FDIC case; rather, much of what they know was learned through communications they assert were privileged. Further, plaintiffs contend that all three of their representatives have testified fully in depositions, as have several of their attorneys (Doc. #S-15, pp. 3-5).

It appears that plaintiffs asserted the attorney-client privilege whenever any portion of their knowledge came from an attorney, regardless of whether they possessed non-privileged knowledge of the matter. For example, it seems highly unlikely that Barron Collier's awareness that Local filed a lawsuit against the United States Government came only from privileged sources. Exhibit A: p.38.

Additionally, both plaintiffs have asserted the attorney-client privilege with respect to their factual knowledge of their own case. Plaintiff, Barron Collier, asserted the attorney-client privilege, and refused to answer questions relating to whether he was aware he had sued certain defendants personally (id. at 44, 109); when he first learned he had sued A&P (id. at 100); and if he

knew as of a certain date and time whether he was going to sue defendants (id. at 101). Barron Collier also asserted the attorney-client privilege when asked if he had an understanding as to whether counsel had been hired to represent him in connection with the FDIC case (id. at 54-55); and if A&P had been hired to represent him individually (id. at 56); or if he knew whether A&P stated to Mr. Sherman that it did not represent him (id. at 71, 72). Barron Collier also asserted the privilege as to several questions asked about allegations made in the Second Amended Complaint and his knowledge about such allegations. Barron Collier refused to answer what contract implied-in-fact he had with A&P (id. at 102); the basis of his claims against any defendant (id. at 105); what he thinks defendant Garbow did wrong and what it is he is suing Garbow for (id. at 107); what fraud he is alleging any defendant committed against plaintiffs (id. at 107-08); why he is suing any defendant; and whether his source of knowledge as to why he is suing was solely through communication with counsel (id. at 123-25).

Plaintiff Miles Collier asserted the attorney-client privilege as to his own understanding of certain provisions of a Settlement Agreement and a Resolution and Modification Agreement (Exhibit B: pp. 122-24, 139); wrongful conduct of which he had knowledge prior to instituting suit against IBC (id. at 168); the basis for saying in the Complaint that A&P wrongfully concealed information (id. at 186); knowledge certain defendants possessed regarding tax benefits

(<u>id.</u> at 186-87); his knowledge and understanding of a deduction referenced in the complaint (<u>id.</u> at 189-90); what contract implied-in-fact he had with defendants (<u>id.</u> at 192); what fiduciary duty existed between himself and defendants (<u>id.</u> at 194); what constituted the constructive fraud and actual fraud alleged in the complaint against defendants (<u>id.</u> at 195-97); what negligence or negligent misrepresentations were committed by defendants against him (<u>id.</u> at 197-98); what business relationship defendants interfered with (<u>id.</u> at 200, 202); what breach of fiduciary duty defendants aided and abetted (<u>id.</u> at 203-04, 208); what constructive fraud defendants aided and abetted (<u>id.</u> at 204); whether he believed Local or IBC breached a fiduciary duty to him (<u>id.</u> at 205); what constituted constructive fraud against him by a third party or by Local or IBC (<u>id.</u> at 206, 207-08); whether he knew if Jenkins & Gilchrist had any role in representing anyone in connection with the FDIC litigation (<u>id.</u> at 209); how A&P may have violated FDUTPA (<u>id.</u> at 210); and whether he had been declared incompetent or had a guardian appointed during the pertinent time periods in this case (<u>id.</u> at 251).

The attorney-client privilege cannot be used both as a sword and a shield. <u>Willy v. Admin. Review Bd.</u>, 423 F.3d 483, 497 (5th Cir. 2005). Additionally, "It is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to

thwart discovery, may be deemed to have waived that privilege...." GAB Bus. Servs., Inc. v. Syndicate 627, 809 F.2d 755, 762 (11th Cir. 1987). As stated in First S. Baptist Church of Mandarin, Fla., Inc. v. First Nat'l Bank of Amarillo, 610 So. 2d 452, 454 (Fla. 1st DCA 1992), "[i]f a party has injected into the litigation issues going to the very heart of the litigation, such party cannot avoid discovery into such issues by invoking the attorney-client privilege." To the extent that plaintiffs knowledge of the basic facts and circumstances underlying their claims came from communications with counsel, they put those communications at issue -- and waived any applicable privilege -- by relying on those communications as the factual basis for their suit.

Plaintiffs rely heavily on S. Bell Tel. & Tel. Co. v. Deason, 632 So. 2d 1377 (Fla. 1994). There, company employees made confidential statements to the company's internal counsel; counsel discussed those statements with upper level managers who had a "need to know" the information; and those upper level managers made disciplinary decisions based on that information. Id. at 1387. When the managers were questioned about their reasons for making those disciplinary decisions, the managers refused to respond based on the attorney-client privilege. The court held that the managers were not required to respond because they had no firsthand knowledge of the facts sought by the opposing party. Id. While the court recognized that the underlying facts were discoverable, the court reasoned that in these circumstances -- where the

deponent's knowledge was based solely on their confidential communications with the company's counsel -- it would be difficult to decipher the communications from the underlying facts. Id.

The instant case is distinguishable from Southern Bell. Here, plaintiffs initiated this suit. They alleged that defendants breached fiduciary duties owed to them, breached contracts with them, and committed deceptive and unfair trade practices against them. Now, they are refusing to respond to the most basic questions, such as "Why are you suing Arnold & Porter?" (Exhibit A: p. 123) because, according to their counsel, they have no firsthand knowledge of the issues in this case. Plaintiffs' counsel asserts in the opposition to this motion that nearly all of plaintiffs' knowledge regarding the facts of this case was obtained through communications with counsel. Counsel, however, fails to identify when these communications occurred and who was present.

The attorney-client privilege does not attach to all communications with plaintiffs' "representatives" merely because those "representatives" were attorneys. "The attorney-client privilege 'attaches only to confidential communications not intended to be disclosed to third persons who are not furthering the rendition of legal services.' Mobley v. State, 409 So. 2d 1031, 1038 (Fla. 1982)." McWatters v. State, No. SC07-51, 2010 WL 958069 at *17 (Fla. Mar. 18, 2010). A communication is not privileged unless an attorney is acting in his professional capacity as a provider of legal services. Skorman v. Hovanian of

-13-

Florida, Inc., 382 So. 2d 1376, 1378 (Fla. 4th DCA 1980)("[W]here a lawyer is engaged to advise a person as to business matters as opposed to legal matters, or when he is employer [sic] to act simply as an agent to perform some non-legal activity for a client the authorities uniformly hold there is no privilege."). Even where communications are privileged, the underlying facts are discoverable. Carnival Corp. v. Romero, 710 So. 2d 690, 695 (Fla. 5th DCA 1998)(citing Upjohn Co. v. United States, 449 U.S. 383 (1981)). Without a showing that the representatives were acting in a legal capacity, plaintiffs cannot establish that the privilege attaches.

Accordingly, defendants' request for a continuation of the depositions is granted. Plaintiffs will be required to answer the questions cited above. Plaintiffs may make an objection based upon attorney-client privilege, but if they do so, they must support that objection with disclosure of information establishing the privilege, akin to a privilege log. Specifically, plaintiffs must identify the individuals who were parties to the communication, the date and place of the communication, the general subject matter of the communication, and any additional information sufficient to allow the Court to assess the applicability of the claimed privilege. See, e.g., United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996); Magical Cruise Co. v. Dragovich, 876 So. 2d 1281, 1282 (Fla. 5th DCA 2004). The Court

sustains the objections to the questions in the depositions which have not been referred to above.

**IV.**

The Court finds no error in the errata sheets. However, given the substantive nature of the changes, the Court will allow counsel to ask follow up questions at the continued deposition.

**V.**

Defendants are seeking reimbursement of all expenses incurred in bringing this motion and in re-deposing the Colliers. Federal Rule of Civil Procedure 37(a)(5)(A) provides:

> If the motion [to compel] is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

The objections raised by plaintiffs were not substantially justified. Substantially justified means that "reasonable people could differ as to the appropriateness of the contested action." Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997)(citing Pierce v. Underwood, 487 U.S. 552, 565). Because no exception to Rule 37(a) applies, the Court orders defendants to pay

plaintiffs' reasonable expenses incurred in making this motion.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Compel Deposition Answers and to Re-Depose Plaintiffs Miles C. Collier and Barron G. Collier, II (Doc. #S-14) is **GRANTED** as set forth in this Opinion and Order. Plaintiffs will be required to answer the questions cited above.

2. Defendants shall serve and file a claim for reasonable expenses, including attorney's fees within **TWENTY-ONE (21) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this  5th  day of May, 2010.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record